UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SIMONE SYKES, Individually, and as Administrator of the Estate of ANGELO L. PURNELL; and WINIFRED McCLARIN, as Administrator of the Estate of HATTIE PURNELL,

Plaintiffs,

vs 5:04-CV-68

JOHN McPHILLIPS, Facility Health Services Director, Hale Creek Alcohol and Substance Abuse Correctional Treatment Center ("Hale Creek"); DAWN GOES, R.N., f/k/a John or Jane Doe ("M.D.#1); PETER HICKEY, R.N., f/k/a John or Jane Roe (M.D. #2); JOHN McPHILLIPS, R.N., f//k/a John or Jane Soe (M.D. #3); BARBARA FLANSBURG, R.N.; NATHAN LITTAUER HOSPITAL AND NURSING HOME; and ALBERT JAGODA, M.D.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| KOOB & MAGOOLAGHAN<br>Attorneys for Plaintiffs<br>Suite 408<br>19 Fulton Street<br>New York, New York 10038 | ELIZABETH L. KOOB, ESQ.<br>JOAN MAGOOLAGHAN, ESQ.<br>KEITH M. DONOGHUE, ESQ. |
| O'CONNOR O'CONNOR BRESEE & FIRST, PC<br>Attorneys for Defendants John McPhillips and Albert Jagoda, M.D.<br>20 Corporate Woods Boulevard<br>Albany, New York 12211 | JUSTIN O. CORCORAN, ESQ. |
| HON. ELIOT SPITZER<br>Attorney General of the State of New York<br>Attorney for Defendants John McPhillips, Dawn Goes, Peter Hickey, John McPhillips, R.N., and Barbara Flansburg<br>Department of Law<br>The Capitol<br>Albany, New York 12224 | STEPHEN M. KERWIN, ESQ.<br>Asst. Attorney General |

CARTER CONBOY CASE BLACKMORE
MALONEY & LAIRD, PC
Attorneys for Defendant Nathan Littauer
Hospital and Nursing Home
20 Corporate Woods Boulevard
Albany, New York 12211

WILLIAM J. DECAIRE, ESQ.
WILLIAM D. YOQUINTO, ESQ.

DAVID N. HURD
United States District Judge

**MEMORANDUM DECISION and ORDER**

## I. INTRODUCTION

Simone Sykes and Winifred McClarin (collectively "plaintiff"), are representatives of Angelo Purnell's ("decedent") estate, and his mother's estate respectively. Plaintiff brings this action pursuant to 28 U.S.C. § 1983 ("§ 1983") alleging constitutional violations arising from the delivery of emergency medical services during the decedent's incarceration with New York State Department of Corrections. There is also a state law claim against one of the defendants. Defendants are (1) various employees at Hale Creek Alcohol and Substance Abuse Correctional Treatment Center ("Hale Creek"), a state facility where the decedent was confined, (2) Nathan Littauer Hospital and Nursing Home (the "Hospital"), the private hospital which provided emergency services to the decedent, and (3) Dr. Albert Jagoda ("Dr. Jagoda"), the doctor at the Hospital who provided decedent's emergency care.

The Hospital and Dr. Jagoda move pursuant to Fed. R. Civ. P. 56 for summary judgment on the narrow issue of their "state actor" status. Plaintiff opposes. Oral argument was heard on November 10, 2005, in Utica, New York. Decision was reserved.

## II. FACTS

The decedent suffered from diabetes while confined at Hale Creek and it is alleged that the defendants were deliberately indifferent to his medical needs. On January 4, 2002, Hale Creek staff arranged for the decedent's transport to the Hospital because his medical condition required emergency care.

Hale Creek does not maintain emergency medical care equipment on its premises. Thus, in order to maintain its accreditation, Hale Creek must demonstrate that prisoners have access to outside care. On several occasions, the Hospital provided Hale Creek with a letter stating that it would treat inmates presented for care. One such letter is included in the record. Dated February 7, 2000, the letter states: "Nathan Littauer Hospital & Nursing Home agrees to provide the Johnstown ASATCA with both ambulatory and impatient health care." (Docket No. 56, Kelly Aff. Ex. K.)

As the Hospital is the closest emergency care provider to Hale Creek, it treated 43 of the 44 Hale Creek inmates that required such care between January 1, 2001 and December 31, 2002. (Donohue Decl. Ex . M.) Hale Creek inmates are also transferred to other medical care facilities in the area. Unlike two other area hospitals, the Hospital does not have a Department of Corrections secured facility on its premises.

The decedent was treated in the Hospital's emergency room by Dr. Jagoda, the only emergency room physician attending patients at that time. Dr. Jagoda is a physician-shareholder with Saratoga Emergency Physicians, P.C., which contracts with the Hospital to provide emergency care. He worked approximately 20 shifts per year at the Hospital as an independent contractor - not an employee.

Defendants maintain that the decedent received the same medical care as any other patient regardless of his prisoner status. Plaintiff disputes this by pointing out that state corrections officers exercised continual custody over the decedent in a manner that interfered with the confidentiality normally accorded the health information of free patients, the Hospital accommodated officers' constant attendance upon the decedent and the state paid for his medical care. The Hospital was reimbursed at Medicaid ER rates. (Donahue Aff. Ex. Y.)

After the decedent was transferred to the Hospital, he remained there for between three and four hours. Dr. Jagoda determined that the Hospital could not meet his medical needs and arranged for his transfer to St. Peter's Hospital in Albany which could provide specialty services in nephrology and vascular surgery. The decedent died the next day at St. Peter's Hospital.

## III. DISCUSSION

### A. Summary Judgment

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). The Court is "to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." Schwimmer v. Kaladjian, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing Anderson, 477 U.S. at 249-50)

**B. § 1983 State Actor Status**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." West v. Atkins, 487 U.S. 42, 48 (U.S. 1988). Plaintiff alleges that defendants demonstrated deliberate indifference to the decedent's serious medical needs and such conduct constitutes cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 105 (1976).

A plaintiff must also show “that the alleged deprivation was committed by a person acting under color of state law.” West, 487 U.S. at 48. “A defendant acts under color of state law when he exercises ‘some right or privilege created by the State . . . or by a person for whom the State is responsible,’ and is ‘a person who may fairly be said to be a state actor.’" Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 162 (D. Conn. 2005) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). The Hospital and Dr. Jagoda move separately on the issue of their state actor status and the motions will be addressed accordingly.

**1. Nathan Littauer Hospital and Nursing Home**

The Hospital is a private, not-for profit corporation. “As a general rule, private hospitals do not act under the color of law for § 1983 purposes.” Okunieff v. Rosenberg, 996 F. Supp. 343, 356 (S.D.N.Y. 1998) (citing Thomas v. Beth Israel Hosp., 710 F. Supp. 935, 940 (S.D.N.Y. 1989)). There are three exceptional circumstances wherein state actor status is conferred. Id. at 348; Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982). The first two - (1) when there is a nexus or joint action between the state and the provider and (2) when the provider acts under state "compulsion" - are not at issue in the instant case. The third exception is made pursuant to a "public function" test. The foundation case in this area is West v. Atkins, 487 U.S. 42 (1988).

In West, the Supreme Court found a physician to be a state actor when he provided health care to prisoners, in the prison, pursuant to a contract with the facility. It was explained that the provision of such care constitutes a public function. The Court emphasized the fact that a prisoner lacks any choice in his healthcare and noted:

> Under state law, the only medical care West could receive for his injury was that provided by the State. If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care.

West, 487 U.S. at 55. "The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to [the physician]; and [he] voluntarily assumed that obligation by contract." Id. at 56.

Thereafter, the Court reviewed a number of factors to consider in making a determination whether a private physician would be deemed a state actor.

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner.

Id. at 55-56. A physician's duty to exercise independent professional judgment does not shield a physician from state actor status. Id. at 52. Nor is it relevant that the physician is paid by contract, works at other medical facilities, or only works at the prison part-time. Id. at 55-56.

The Court distinguished the traditional provision of medical services in prisons from the ordinary physician-patient relationship by noting the context in which prisoner care is provided. Id. at 57.

> That correctional setting, specifically designed to be removed from the community, inevitably affects the exercise of professional judgment. Unlike the situation confronting free patients, the nonmedical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as West. By regulation, matters of medical health involving

> clinical judgment are the prison physician's "sole province.". . .These same regulations, however, require respondent to provide medical services in keeping with the security regulations of the facility. The record is undeveloped as to the specific limitations placed on respondent by the state prison system. But studies of prison health care, and simple common sense, suggest that his delivery of medical care was not unaffected by the fact that the State controlled the circumstances and sources of a prisoner's medical treatment. For one thing, the State's financial resources are limited. Further, prisons and jails are inherently coercive institutions that for security reasons must exercise nearly total control over their residents' lives and the activities within their confines; general schedules strictly regulate work, exercise, and diet. These factors can, and most often do, have a significant impact on the provision of medical services in prisons.

Id. at 57 (citations and quotations omitted).

While instructive, West does not provide clear lines for determining state actor status in all arrangements for a prisoner's medical care. It is clear that medical care providers working in a prison are state actors. It is also clear that hospitals and physicians that provide care outside of the prison facility may be held to be state actors when they work pursuant to contract. See e.g., McKenney v. Greene Acres Manor, 650 A.2d 699, 702 (Me. 1994). This is logical, for in contracting, they have voluntarily assumed the state functions. It becomes less clear when medical treatment is provided, off premises, in varied service relationships.

Some courts have held that those providing care outside the prison facility may be deemed state actors even without a contract because, in full awareness of the prisoners circumstances of incarceration, they chose to accept prisoners as patients. See Conner v. Donnelly, 42 F.3d 220, 226 (4th Cir. 1994) ("A private physician who treats a prisoner upon referral by the state, and who knows that the patient is a prisoner, voluntarily assumes the state's obligation to provide medical care to inmates.")

The plaintiff does not argue that there is an express contract between Hale Creek and the Hospital. The only documentation of a relationship between Hale Creek and the Hospital is the letter expressing the Hospital's willingness to treat Hale Creek patients for ambulatory and impatient health care. It does not refer to the provision of emergency services. Plaintiff argues that there is an ongoing relationship between Hale Creek and the Hospital which demonstrates an implied contract and/or the Hospital's voluntary assumption of responsibility and, thus, state actor status.

While it is probable that state actor status may be conferred through less than express contracting, that is not circumstance of this particular case. The instant facts are too far removed from the facts of West to justify extending state actor liability to the Hospital. Minding the Supreme Court's instruction to focus on the nature of the relationship between the state, the prisoner and the service provider, the dispositive factor in the Hospital's provision of medical services is the lack of voluntariness.

Plaintiff lists a number of interactions between the parties to demonstrate that the Hospital voluntarily assumed the function of the state. Plaintiff points out that the Hospital accommodated the particular security measures characteristic to incarceration, but this conduct is really nothing more than the common sense accommodation of security officers in the proximity of a patient. See Morse v. City of New York, Civ Act. No. 00-CV-2528, 2001 U.S. Dist. LEXIS 12795, *20 (S.D.N.Y. August 24, 2001) ("The fact that [plainitff] was brought to the hospital from police custody and was released from the hospital into police custody is insufficient to transform this private hospital and its staff into state actors for section 1983 purposes."). Plaintiff also argues that Hale Creek was listed as the decedents insurer and the Hospital accepted payments at Medicaid rates to satisfy inmates' accounts. This fact

does not support an inference of any particular arrangement between the Hale Creek and the Hospital, only a relationship between the decedent and the state.

Plaintiff's main argument is that Hale Creek had acted in long-standing reliance on the Hospital and, in accommodating that reliance, the Hospital voluntary, if not formally, accepted Hale Creek's delegation of its duty to provide emergency medical care.

The Hospital is the nearest one located to Hale Creek and federally mandated pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, to treat all patients who present themselves for medical care. "The purpose of EMTALA is to prevent 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized." Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 792 (2d Cir. 1999).

> EMTALA, which applies to all hospitals that participate in the federal Medicare program, imposes two primary obligations on those hospitals. First, when an individual shows up for treatment at a hospital's emergency room, "the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition" exists. 42 U.S.C. § 1395dd(a). Second, if the screening examination indicates that an emergency medical condition does exist, the hospital ordinarily must "stabilize the medical condition" before transferring or discharging the patient. Id. § 1395dd(b)(1)(A).

Id. Willingness to accept patients under these circumstances cannot be construed, even impliedly, as contracting to provide emergency medical services.

This is not to say that a hospital never could impliedly contract or acquiesce into a state actor role. However, in the context of emergency services more is required to demonstrate an affirmative relationship with a state entity to overcome the fact that a hospital is compelled provide emergency care, and thus maintain what appears to be a relationship.

Plaintiff essentially argues that any actor who provides medical care to a prisoner under most any circumstance may be deemed a state actor: the fact of custody is dispositive of the state action requirement. This significant extension of West is presumably justified on policy grounds because a contrary ruling would allow prison staffs to avoid liability simply by contracting out services. However compelling this policy concern, it is not likely that Congress intended to confer state actor status through this interpretation of EMTALA and there is no indication in West that the Supreme Court would extend the scope of such status to all providers of care to prisoners without an express contract. This would be especially true in a situation, as here, of emergency room treatment in a private hospital. The Hospital is not a state actor for § 1983 purposes and the Third, Fourth and Eighth § 1983 claims against it will be dismissed.

**2. Albert Jagoda, M.D.**

Plaintiff argues that Dr. Jagoda may be deemed a state actor because the Hospital regularly treated Hale Creek inmates, Dr. Jogoda's medical group contracted to provide emergency services to the Hospital and, therefore, he should have expected to have to treat inmates. Plaintiff adds that Dr. Jogoda knew that the decedent was an inmate when he treated him. Again, plaintiff argues that fact of custody and a provider's knowledge of that fact are sufficient to confer state actor status. This argument is rejected for the reasons articulated in Nunez v. Christopher Horn, 72 F. Supp. 2d 24 (N.D.N.Y. 2000). See also Kartorie v. Dunham, 108 Fed.Appx. 694, 699 (3rd Cir. 2004).

In Nunez, the defendant physician escaped § 1983 state actor status by distinguishing his conduct from the conduct of the physician in West. Id. at 27. The Nunez physician

performed orthopedic surgery at a private hospital, not in the prison like the physician in West. Id. Moreover, the Nunez physician had not contracted with the Bureau of Prisons to provide services like the physician in West.[1] Id. Both circumstances are true in the instant case but, there is even less reason to infer an acceptance of the state function of providing care here, than there was in Nunez. The physician in Nunez accepted the prisoner as a referral patient. Here, a physician engaged in a single encounter with a prisoner presented for emergency treatment, which he was obligated under law to provide.

A light of West and Nunez, Dr. Jagoda will not be deemed a state actor for § 1983 purposes and the Third, Fourth, and Eighth § 1983 claims against him will be dismissed. As these are the only claims stated against him he will be dismissed from this action.

**C. Malpractice/Negligence Claim against The Hospital**

In the Fifth claim, plaintiff also brings a state law malpractice/negligence claim against the Hospital pursuant to 28 U.S.C. 1367. That statute provides that a district court may decline to exercise supplemental jurisdiction upon consideration of several factors, including the dismissal of the claims over which it has original jurisdiction. 28 U.S.C. 1367(c); Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")

Despite the dismissal of the federal claims against the Hospital and Dr. Jagoda, this action will continue to be maintained pursuant to federal jurisdiction over the Hale Creek

---

[1] As noted above, if there was an express contract to provide medical care to prisoners, state actor status would be conferred. See Thomas v. Arevalo, Civ. Act. No. 95-CV4704, 1998 U.S. Dist. LEXIS 11588, *34 (S.D.N.Y. July 28, 1998)(employer contracted with the state); Garraway v. Artuz, Civ. Act. No. 01-CV-3126, 2002 U.S. Dist. LEXIS 2194, * 17 (S.D.N.Y. February 14, 2002) (same).

defendants. This is not sufficient to justify maintenance of the malpractice/negligence claim against the Hospital. The allegations of deliberate indifference regarding the medical care received at Hale Creek are separate and distinct from the allegations of malpractice/negligence regarding the medical care received at the Hospital. There is no nexus between the facts and circumstances to be demonstrated in the federal action against the Hale Creek defendants and the state law action against the Hospital. For reasons of judicial efficiency, and to avoid jury confusion, supplemental jurisdiction over the malpractice/negligence claim is declined. The Fifth claim will be dismissed without prejudice. There being no other claims against the Hospital, it will be dismissed from this action.

**IV. CONCLUSION**

In the context of EMTALA's mandate that the Hospital must provide emergency services, plaintiff has not demonstrated that the Hospital impliedly contracted to assume the state function of providing emergency medical care to prisoners. Dr. Jagoda's non-contractual provision of medical services outside of the prison context, in an emergency room, is not sufficient conduct to support a finding of state actor status. Jurisdiction is declined over the state law claim.

The second amended complaint is dismissed against the Hospital and Dr. Jagoda. The remaining claims are against the Hale Creek defendants.

Therefore, it is

ORDERED that

1. Defendants', Nathan Littauer Hospital and Nursing Home and Albert Jagoda, M.D., motions for summary judgment as to the 42 U.S.C. § 1983 claim is GRANTED;

2. The Third, Fourth, and Eighth claims are DISMISSED against the defendants Nathan Littauer Hospital and Nursing Home and Albert Jagoda, M.D.;

3. Jurisdiction is declined over the state law malpractice/negligence claim against defendant Nathan Littauer Hospital and Nursing Home; and

4. The Fifth claim is DISMISSED against defendant Nathan Littauer Hospital and Nursing Home, without prejudice.

IT IS SO ORDERED.

United States District Judge

Dated: January 26, 2006
Utica, New York.